[Cite as *State v. Carter*, 2018-Ohio-4468.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                       CASE NO. 13-18-13

    v.

CYLE J. CARTER,                           O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 17CR0207

**Judgment Affirmed**

**Date of Decision:   November 5, 2018**

APPEARANCES:

    *Jennifer L. Kahler* for Appellant

    *Angela M. Boes* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Cyle Carter ("Cyle"), brings this appeal from the March 30, 2018, judgment of the Seneca County Common Pleas Court sentencing him to a 10-year prison term after Cyle was convicted by a jury of Aggravated Burglary in violation of R.C. 2911.11(A)(1), a first degree felony, and Felonious Assault in violation of R.C. 2903.11(A)(1), a second degree felony. On appeal, Cyle argues that there was insufficient evidence to support his conviction for Felonious Assault, and that his convictions for Felonious Assault and Aggravated Burglary were against the manifest weight of the evidence.

*Procedural History*

{¶2} On December 6, 2017, Cyle was indicted for Aggravated Burglary in violation of R.C. 2911.11(A)(1), a first degree felony, Felonious Assault in violation of R.C. 2903.11(A)(1), a second degree felony, and Assault in violation of R.C. 2903.13(A), a first degree misdemeanor. It was alleged that Cyle, his cousin Robert Jr. ("Bobbie"), and Bobbie's son Robert III ("Robert"), forcefully entered the trailer of Cynthia Chilcutt, that they went directly to a back bedroom to find Edward Carter, Cyle's uncle, and that they then beat and kicked Edward Carter to the point that he had fractured ribs. It was also alleged that as the three assailants were leaving, they caused harm to Cynthia, leaving bruises on her.

{¶3} Cyle pled not guilty to the charges, and his case proceeded to a jury trial. Cyle was convicted of Aggravated Burglary and Felonious Assault against Edward, but he was acquitted of the Assault charge against Cynthia.

{¶4} On March 27, 2018, Cyle's case proceeded to sentencing. The State requested an aggregate 15-year prison term for Cyle, while Cyle and his attorney sought leniency, requesting a prison term of roughly 5 years. The trial court ordered Cyle to serve a 10-year prison term on the Aggravated Burglary conviction, and a 7-year prison term on the Felonious Assault conviction. The prison terms were ordered to be served concurrently, for an aggregate 10-year prison term.

{¶5} A judgment entry memorializing Cyle's sentence was filed March 30, 2018. It is from this judgment Cyle appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The trial court erred in finding appellant guilty of aggravated burglary when the conviction was against the manifest weight of the evidence.**

**Assignment of Error No. 2**
**The trial court erred in finding appellant guilty of felonious assault where the state failed to introduce sufficient evidence to support the conviction.**

**Assignment of Error No. 3**
**The trial court erred in finding appellant guilty of felonious assault when the conviction was against the manifest weight of the evidence.**

{¶6} For the sake of clarity, we elect to address two of the assignments of error together, and out of the order in which they were raised.

*Second Assignment of Error*

{¶7} In Cyle's second assignment of error, he argues that there was insufficient evidence to convict him of Felonious Assault.

Standard of Review

{¶8} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* When an appellate court reviews a record upon a sufficiency challenge, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard*, 104 Ohio St.3d 54, 2004–Ohio–6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

Evidence Presented by the State

{¶9} In order to convict Cyle at trial, the State called Britne Carter, the wife of Edward, the victim.[1] Britne testified that on the night in question she went to Cynthia Chilcutt's trailer with Edward. Britne testified that when they arrived,

---

[1] Britne was not the first witness called by the State, but for the sake of a clearer narrative we will present her testimony first.

Edward went into the back bedroom to get some clothes to wash.[2] Britne testified that just after she arrived Cynthia had to go to the bathroom so Britne sat down on the couch with her phone.

{¶10} Britne testified that within 10 minutes of their arrival at Cynthia's trailer, she heard a noise, looked up, and the door to the trailer came "flying open." (Tr. at 205). Britne testified that no one knocked, and no one had been given permission to enter.

{¶11} Britne indicated that three men entered the residence, Cyle, Bobbie, and Robert. Britne testified that the three men walked quickly to the back of the trailer into the bedroom where Edward was, and started assaulting him. Britne testified that she followed the men to the back bedroom, and witnessed Edward on the ground with all three men kicking him.

{¶12} Cynthia Chilcutt testified at trial, providing a similar story. Cynthia testified that several hours before the incident, she received a "threatening" phone call from Bobbie, wanting to know if Edward was there. (Tr. at 235-236). Cynthia said that he was not, as Edward did not live there. Cynthia testified that Bobbie said he was coming to get Edward. Cynthia testified that she told Bobbie that he was not welcome in her house.

---

[2] To be clear, Edward and Britne did not live with Cynthia.

{¶13} Cynthia testified that later on the evening in question she was at home sick with the flu when Edward and Britne came over. Cynthia indicated that after the two entered, she went to the bathroom, and was in there minutes later when she heard something in the bedroom. Cynthia testified that when she came out of the bathroom, she saw Bobbie, Robert, and Cyle all kicking and punching Edward on the floor. Cynthia indicated that Cyle had his hood up, but she recognized him, and that her dog was attacking the assailants.

{¶14} Cynthia testified that she screamed for the men to get out of her house and to call 911. Cynthia stated she called 911 herself while the men were there, and that they then began to leave. Cynthia testified that as the men were leaving, someone grabbed her and threw her against the doorway of her bedroom, resulting in bruises and fractured ribs. Cynthia testified that the men left after she indicated she had called the cops.

{¶15} In the weeks after the incident, Cynthia testified that Cyle contacted her via text message. Cynthia testified that in the messages it seemed like Cyle wanted her to lie and say that he had been allowed into her home. The messages between them were introduced into evidence. In the messages, although Cyle attempted to get Cynthia to say that he had been let into her home that night by Britne, Cynthia maintained that she did not let them in, and that Britne had indicated to her that, "you guys broke in." (State's Ex. 12). Cynthia maintained in the

messages that "[yo]u guys broke into my door." (*Id.*) Cynthia testified at trial that she always locked her door at the trailer, but even if it was locked, with some force it could be pushed open.

{¶16} Cyle also called Cynthia on the phone and he recorded the conversation, which was played at trial and entered into evidence. During the recording, Cynthia made such statements as "you guys came in there fucking forcefully," that she did not let them into her house, that it was breaking and entering, and that Bobbie called her earlier in the day and threatened Edward. (Tr. at 156). Cynthia also stated that "you fucking pawed on him," meaning Cyle struck Edward. (Tr. at 149); (State's Ex. 14). Cynthia indicated that she felt like Cyle was trying to get her to lie and change her story.

{¶17} The State also presented the testimony of Edward Carter. Edward testified that on the evening in question he and his wife went to Cynthia's to pick up laundry to take it to the laundromat. Edward testified that soon after his arrival, while he was gathering clothes into a bag, he was "swatted" or "blasted upside [his] head" and knocked to the ground in the back bedroom. (Tr. at 271). Edward testified that Bobbie, Robert, and Cyle kicked him repeatedly on the ground, from his armpits to his waist. Edward testified that he had liver cancer, and the blows were dangerous. He testified that he received broken ribs as result of the beating, in addition to various other bruises. Pictures of extensive bruising to Edward's side

and medical records confirming the rib fractures were introduced into evidence. Edward testified that at the time of trial he was still having difficulty from the attack.

{¶18} Edward testified he thought the assailants may have been after him because he had reported them to the police for potentially stealing $900 from him. Edward testified that he figured it was retaliation for that.

{¶19} The State also presented the testimony of Officer Michael Moore of the Tiffin Police Department. Officer Moore testified that he responded to Cynthia's trailer around 10 p.m. on the evening in question. He testified that upon arrival he spoke with Edward, who had blood on his lips, red marks on his face, and tears in his eyes. Officer Moore testified that Edward was shaken up and distraught.

{¶20} Officer Moore indicated that he asked what had happened and attempted to learn why the assault occurred. Officer Moore testified that he learned that Edward used to date Constance, who was now dating Bobbie.

{¶21} Officer Moore testified that Edward went to the hospital and that Officer Moore eventually received Edward's medical records, which showed a fracture of multiple ribs on both sides, a head injury, and a contusion on his face. Officer Moore testified that he spoke with Edward and Cynthia, then spoke with Britne later as she was no longer at the residence.

{¶22} Officer Moore testified that Cyle contacted him via phone to give his side of the story, but Cyle was not willing to turn himself in. Officer Moore

indicated that Cyle told him that he and the others were invited into the residence, and that Cyle did not participate in the assault on Edward. Cyle told him that Bobbie was the only person who had struck Edward, and that he actually tried to stop it. Cyle indicated that Bobbie was angry with Edward because Edward had purportedly been kicking in the door of Bobbie's mother's trailer earlier in the evening.

{¶23} Officer Moore testified that Cyle provided him with the audio recording of the call Cyle had with Cynthia. Officer Moore testified that he felt the call illustrated that Cyle was trying to manipulate her. Officer Moore testified that Cyle had testified in Bobbie's trial, indicating that Cyle and Bobbie had actually gone to Cynthia's trailer to buy drugs, that Cynthia was in the bathroom smoking crack when they arrived at her trailer, and that there was a fight between Bobbie and Edward.

{¶24} Officer Moore testified that on the night of the incident he did not see any drugs in Cynthia's residence or any drug paraphernalia. He also testified that Cyle had never made any of the drug-related claims prior to trial.

Argument and Analysis

{¶25} On appeal, Cyle argues that the State presented insufficient evidence to convict him of Felonious Assault in violation of R.C. 2903.11(A)(1), which reads, "No person shall knowingly * * * [c]ause serious physical harm to another[.]" Specifically, Cyle argues that he was not the individual that caused harm to Edward;

rather, he claims that Bobbie was actually the only individual who repeatedly struck Edward. In addition, Cyle argues that the State failed to establish that Edward suffered serious physical harm.

{¶26} As to Cyle's claim that he was not the individual that caused harm to Edward, Cynthia, Britne, and Edward all testified that Cyle took part in repeatedly kicking Edward while he was on the ground. Edward specifically identified Cyle as one of the men who attacked him. Based on the testimony of these *three* witnesses, we cannot find that the State presented insufficient evidence that Cyle was involved in striking Edward. Cyle may contend that there was another explanation, namely that Bobbie actually acted alone and Cyle tried to stop him, but that is a matter of weight for the jury, not a sufficiency matter, thus his argument on this issue is not well-taken.

{¶27} We turn then to Cyle's claim that the State did not establish the element of "serious physical harm." Revised Code 2901.01(A)(5) defines "serious physical harm to persons" as follows.

> **(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;**
>
> **(b) Any physical harm that carries a substantial risk of death;**
>
> **(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;**

**(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;**

**(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.**

**{¶28}** Courts have found that the degree of harm that rises to the level of "serious" is not an exact science. *State v. Montgomery*, 8th Dist. Cuyahoga No. 102043, 2015-Ohio-2158, ¶ 11. Some courts have held that " 'Where injuries to the victim are serious enough to cause him or her to seek medical treatment, the finder of fact may reasonably infer that the force exerted on the victim caused serious physical harm as defined by R.C. 2901.01(A)(5).' " *Montgomery* at ¶ 12, quoting *State v. Lee*, 8th Dist. Cuyahoga No. 82326, 2003-Ohio-5640, ¶ 24.

**{¶29}** Nevertheless, courts have repeatedly stated that "[w]here the assault causes a bone fracture, the element of serious physical harm is met." *Montgomery* at ¶ 13, quoting *Lee* at ¶ 24, citing *State v. Thomas*, 9th Dist. Summit No. 18881, 1999 Ohio App. LEXIS 489 (Feb. 19, 1999); *State v. Childers,* 4th Dist. Jackson No. 96 CA 785, 1997 WL 334994 (June 11, 1997); *State v. Manning,* 4th Dist. Adams No. 94 CA 582, 1995 WL 329583 (May 26, 1995); *see also State v. Sykes*, 6th Dist. Lucas No. L-16-1166, 2017-Ohio-1228, ¶ 21.

**{¶30}** In this case, Edward testified that after the incident he sought medical treatment and that he had fractures to his ribs. His medical records were introduced

into evidence, and a specific diagnosis was listed of "[c]losed fracture of multiple ribs of both sides." (State's Ex. 11). The significant bruising caused by the broken ribs was illustrated in a photograph that was shown to the jury. This was separate from the contusions on Edward's face.

{¶31} Based on the evidence presented, the definitions set forth in R.C. 2901.01(A)(5), and the consistent body of caselaw regarding fractures constituting serious physical harm, we cannot find that the State presented insufficient evidence to convict Cyle of Felonious Assault. Therefore, Cyle's second assignment of error is overruled.

*First and Third Assignments of Error*

{¶32} In Cyle's first assignment of error, he argues that his conviction for Aggravated Burglary was against the manifest weight of the evidence. In his third assignment of error, he argues that his conviction for Felonious Assault was against the manifest weight of the evidence.

Standard of Review

{¶33} Unlike our review of the sufficiency of the evidence, in reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *Thompkins, supra,* at 387. In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses

and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id*. Furthermore, "[t]o reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required. *Thompkins* at paragraph 4 of the syllabus, citing Ohio Constitution, Article IV, Section 3(B)(3).

Evidence Presented by the Defense

**{¶34}** In his defense, Cyle presented the testimony of Bobbie and Robert, and he also testified on his own behalf. Robert testified that on the night in question he was with his wife, Bobbie and his girlfriend, and Cyle. Robert testified that the five of them were all in a car going to Toledo to play pool when he got a call from his 11-year old brother stating that Edward was at Robert's grandmother's trailer kicking the door down. Robert testified that after the call they turned the car around and went back toward his grandmother's trailer, but were pulled over on the way.

**{¶35}** Robert testified that after being pulled over they went back to the house where Robert, Cyle, and Bobbie were all staying. Robert testified that he went to bed with his wife, then heard his truck start so he went out and followed it in the Chrysler to his grandmother's trailer, which was near Cynthia Chilcutt's trailer. Robert testified that he saw Bobbie and Cyle walking across to Cynthia's

trailer, that he saw them knock, and that Britne let them into the trailer. Robert testified he did not know what happened in the trailer because he was not there at the beginning, but when he got in after-the-fact, he heard Cyle telling Bobbie to "stop" because Edward was "done," but then he saw Edward pull a knife.

**{¶36}** Robert testified that he was currently incarcerated and that he had a number of prior convictions despite only being 19. He testified that he had prior convictions for misdemeanor theft, a "[f]elony [t]here tampering with evidence. A [f]elony [f]our arson, a complicity to arson. A [f]elony [f]our theft by, theft of a motorized vehicle by deception. And a [f]elony [f]ive, I don't remember what the [f]elony [f]ive was." (Tr. at 315). On cross-examination it was clarified that Robert had a conviction for receiving stolen property.

**{¶37}** Bobbie testified to a story similar to Robert's, stating that they got a call on the way to Toledo that Edward was kicking in his mother's front door at her trailer. He testified that they turned around to come back, and got pulled over while returning. After being pulled over, Bobbie indicated that they returned to his home.

**{¶38}** Bobbie testified that after returning home he left with Cyle to go to Cynthia's trailer to purchase cocaine. Bobbie testified that his drug dealer was supposed to meet him at Cynthia's, not that Cynthia sold the cocaine. Bobbie testified that he also went to ask Edward why he was at his mother's house.

{¶39} Bobbie testified that when he arrived at Cynthia's trailer, he knocked and Britne opened the door. Bobbie testified on his way to the back of the trailer he saw Cynthia in the bathroom smoking crack, and that he saw Edward with a needle and spoon, about to do drugs. Bobbie testified that he questioned Edward, but Edward pulled out a knife. Bobbie testified that he knocked the knife out of Edward's hand, then they wrestled on the ground. Bobbie attempted to maintain that he had gone to Cynthia's to purchase drugs, but he also seemed to state that he had gone out to look for Edward, confusing his story as to whether he was going to Cynthia for drugs or to find Edward. (Tr. at 362). Bobbie also testified that he did not stay at the trailer after the incident for the police because he had a knife pulled on him twice and he wanted to get out of the situation. On cross-examination Bobbie indicated he had prior convictions.

{¶40} Finally, Cyle testified in his own defense. Cyle testified that in the weeks prior to the incident he had been staying with Bobbie and Robert at Bobbie's residence. Cyle testified that Bobbie was his cousin, and that Edward was his uncle. Cyle testified that he had been working with Bobbie for almost 15 years. Cyle testified to a version of events similar to the other defense witnesses, stating that he and Bobbie had gone to Cynthia's to buy drugs, and that they had been allowed into the residence by Britne. Cyle testified that he never struck Edward, but rather tried to pull Bobbie off of him after they got into a fight.

**{¶41}** On cross-examination Cyle testified that they were going to Cynthia's that night to purchase drugs even though he had proudly told an officer that he had been "clean" for 11 months. Cyle testified that he fled the scene and did not turn himself in for weeks after the incident. He testified to a significant number of prior convictions, many involving thefts and breaking and entering, all prior to turning 28 years old.[3] At the conclusion of Cyle's testimony, the defense rested its case.

Argument and Analysis

**{¶42}** On appeal, Cyle argues that his convictions for Felonious Assault and Aggravated Burglary were against the manifest weight of the evidence. As previously stated, Felonious Assault in violation of R.C. 2903.11(A)(1), reads "No person shall knowingly * * * [c]ause serious physical harm to another[.]"

**{¶43}** Aggravated Burglary in violation of R.C. 2911.11(A)(1), reads

**(A)  No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:**

**(1)  The offender inflicts, or attempts or threatens to inflict physical harm on another[.]**

---

[3] On cross-examination the prosecutor elicited testimony of convictions including a 2011 receiving stolen property, a fifth degree felony theft in 2011, two misdemeanor thefts in Seneca county and one in Tiffin, eight counts of misdemeanor theft in Tiffin in November of 2012, one theft in Tiffin in 2013, two felony counts of breaking and entering in march 2014, receiving stolen property in 2014, possession of criminal tools in 2014, tampering with evidence in 2014, felony theft in 2014, complicity to breaking and entering in 2016, and complicity to receiving stolen property in 2017. (Tr. at 431-432).

{¶44} On appeal, Cyle essentially argues that the stories of the State's witnesses were not credible, and that the stories of the defense witnesses were consistent.

{¶45} Contrary to Cyle's arguments, the testimony of the State's witnesses was consistent. Britne testified that she did not allow the three into Cynthia's residence, and that they forced their way inside. Then, Britne, Cynthia and Edward all testified that the three men beating and kicking Edward while he was on the ground specifically included Cyle. Edward suffered serious physical harm as a result of the beating, which consisted of multiple fractures. Thus the State's evidence established all the elements of Felonious Assault, and Aggravated Burglary.

{¶46} Cyle seems to desire this Court to disregard the testimony of the State's witnesses and find that the version of events portrayed by the defense witnesses was more credible. Notably, if evidence is susceptible to more than one construction, a reviewing court is bound to give it the interpretation consistent with the verdict and judgment. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 21, quoting *Seasons Coal Co.*, *Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d Appellate Review, Section 60, at 191-192 (1978); *see also State v. Johnson*, 5th Dist. Stark No. 2014CA00189, 2015-Ohio-3113, ¶ 44.

**{¶47}** Moreover, we give great deference to a jury's credibility determinations, and the jury clearly did not find the defense witnesses credible. *State v. Rexrode*, 10th Dist. Franklin No. 17AP-873, 2018-Ohio-3634, ¶ 11, citing *State v. Redman*, 10th Dist. Franklin No. 10AP-654, 2011-Ohio-1894, ¶ 26, citing *State v. Jennings*, 10th Dist. Franklin No. 09AP-70, 2009-Ohio-6840, ¶ 55. In other words, "jurors are entitled to believe the testimony offered by the State's witnesses." *State v. Wareham,* 3d Dist. Crawford No. 3–12–11, 2013–Ohio–3191, ¶ 25, citing *State v. Bates,* 12th Dist. Butler No. CA2009–06–174, 2010–Ohio–1723, ¶ 11. The jury's determination would seem well supported given Cyle's contact with Cynthia via phone and text, wherein it did seem he wanted her to change her story. Furthermore, all of the defense witnesses had a criminal history involving crimes of dishonesty, further calling their credibility into question.

**{¶48}** Based on the evidence that was presented we cannot find that Cyle's convictions for Aggravated Burglary and Felonious Assault were against the manifest weight of the evidence. Therefore, his first and third assignments of error are overruled.

*Conclusion*

**{¶49}** For the foregoing reasons Cyle's assignments of error are overruled and the judgment of the Seneca County Common Pleas Court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**

**/jlr**