[Cite as *State v. Porter*, 2019-Ohio-4868.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 19AP-29 |
| v. | : | (C.P.C. No. 18CR-1934) |
| Leslie L. Porter, Jr., | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 26, 2019

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee.

**On brief:** *Kura, Wilford & Schregardus Co., L.P.A.,* and *Sarah M. Schregardus* for appellant.

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Leslie L. Porter, Jr., appeals a judgment entry of the Franklin County Court of Common Pleas entered on December 13, 2018 after a bench trial finding him guilty of felonious assault and resulting in a sentence of two years in prison. Viewing the evidence in the light most favorable to the prosecution, we find the evidence sufficient to support his conviction for felonious assault because the evidence showed that he struck the victim twice in the face with his fist or cell phone and the second strike knocked her to the ground and broke her wrist. We also conclude that the trial court did not err in implicitly rejecting Porter's claim to have been provoked. We therefore overrule both of Porter's assignments of error.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On April 23, 2018, a Franklin County Grand Jury indicted Porter for felonious assault in relation to an altercation on April 12 of that year between Porter and

his neighbor, Amy Lacorte.[1] (Apr. 23, 2018 Indictment). Porter waived his right to trial by jury and, on December 11, 2018, the prosecution tried his case to a judge of the Franklin County Court of Common Pleas. (Tr. Vol. III, filed April 24, 2019; Dec. 10, 2018 Jury Waiver.)

{¶ 3} The alleged victim, Lacorte, testified first. (Tr. Vol. III at 18.) She testified that she was 57 and that, in April 2018, she lived in an apartment complex on the east side of Columbus. *Id.* Porter was her neighbor, living in a building just behind hers and sharing the same back yard space. *Id.* at 21, 38. On the night in question, she was sitting out in the back yard near a firepit drinking. *Id.* at 22, 24, 27. Porter eventually joined her along with another neighbor. *Id.* at 24-25. Porter was drinking also. *Id.* at 27. She and Porter argued about a number of trivial subjects, and in her estimation, he seemed to be in a bad mood. *Id.* at 25-29. After an argument about whether she would move her car from a space in front of Porter's apartment, the other neighbor agreed to move the car for her and left to complete that task. *Id.* at 29-30. While the neighbor was moving the car, the argument by Porter and Lacorte escalated further and Porter approached her. *Id.* at 30-32, 44. She rose to her feet as she saw him approaching and tried to put her chair between the two of them. *Id.* at 31-32. Despite her attempt to interpose the chair, he successfully hit her twice. *Id.* at 31-33, 40-41. She fell and "spider[ed]" away from him on her back. *Id.* at 33. She retrieved her phone and telephoned the police. *Id.*

{¶ 4} Lacorte suffered bruising and cuts to her face and arms. (State's Exs. 1-3.) She also (presumably when she fell) suffered a broken wrist that required surgery. (Tr. Vol. III at 35-36.) As of the date of trial, Lacorte reported that she still was experiencing lingering numbness and tingling in her fingers as a consequence of the broken wrist. *Id.* at 36-37.

{¶ 5} A detective from the Columbus Division of Police also testified. *Id.* at 52. He testified that he responded to the scene of a reported assault involving Lacorte and Porter. *Id.* at 52-53. He observed cuts, bruises, swelling, and an apparently broken wrist as documented in the photographs of Lacorte introduced by the prosecution as exhibits 1-3. *Id.* at 52-54. He stated that he interviewed Porter and the trial court then listened to a

---

[1] The indictment also charged a repeat violent offender specification but the specification was never substantiated and was not found by the trial court. (Tr. Vol. IV at 138-39, filed April 24, 2019.) Thus, we omit further mention of it from this opinion.

recording of his interview at the scene (the recording was transcribed as part of the record). *Id.* at 62-63.

{¶ 6}  In the recording, Porter said he had consumed two 24-ounce cans of beer on the evening of the fight.  *Id.* at 65.  In his opinion, Lacorte was very drunk and becoming belligerent as he, Lacorte, and two other neighbors sat around the firepit.  *Id.* at 71-74.  He admitted that he and Lacorte argued over various things, including whether she should have the firepit lit in the windy weather.  *Id.* at 74-75.  During this time period, one of the other neighbors left, leaving just one witness other than Lacorte and himself.  *Id.* at 73-74.

{¶ 7}  Porter stated further in the recording that things reached a tipping point when he received a phone call in which he learned he might have company over at his apartment later, and informed Lacorte that she might have to move her car from its place in front of his door.  *Id.* at 77-78.  According to Porter, Lacorte became "ballistic," yelling about how she "d[id]n't give a fuck," was going to "kick [his] ass," and inviting him to fight. *Id.*  Then Porter offered the following statement of what occurred:

> [PORTER]: I walked up to her. I said, ["W]ill you shut the fuck up? It's not that serious.["]
>
> She said, ["W]ell, motherfucker, what?["]
>
> And I just cracked her a couple times with the phone. The first time I cracked her she backed up. And then she came back, and I cracked her again, and she fell.
>
> Now, if somewhere along the line somebody said I hit her five times, after she hit the ground, I never touched her again. You know what I mean? I was like, you need to learn -- because she was trying to kick me for one. And I said, you need to leave people the fuck alone, and just you need to go in the house.
>
> Oh, man, that came into --
>
> [DETECTIVE]: So did she come up, like, in a boxer stance?
>
> [PORTER]: Yeah, she jumped, you know, in a boxer stance, so I - -
>
> [DETECTIVE]: Was she standing up or sitting down?
>
> [PORTER]: She was standing up.
>
> [DETECTIVE]: Okay.

[PORTER]: And I'm, like, okay, I'm a man. If I really want to hurt you, I wouldn't have hit you with a phone. I would have just pieced her up with my hands.

[DETECTIVE]: Um-hum.

[PORTER]: But that wasn't the point. And really she caught me by surprise when she sprung out like that. So I just cracked her with my cell phone -- you know what I mean -- backed her up.

And, when she fell down, I'm was like, hey -- you know what I mean -- you need to leave people alone. You've been out here all week. Actually, ever[] since I moved there, you're causing problems. And everybody's telling her leave people alone, [Lacorte].

We out here trying to have a good time. Why do you always have to try and ruin it?

You know, and she thinks she's the queen of -- I mean, well, you should have heard some of the stuff she was saying to the officers, you know.

[DETECTIVE]: Uh-huh.  I did.

* * *

[DETECTIVE]: So you just hit her twice --

[PORTER]: I just hit her --

[DETECTIVE]: -- kind of, like, smacked her with the cell phone --

[PORTER]: With the cell phone, I cracked --

[DETECTIVE]: -- with your hand with the cell phone in it?

[PORTER]: Yeah, I cracked my cell phone.

[DETECTIVE]: And then she fell, and then it was over.

[PORTER]: It was over. I didn't do anything else to her. I was standing over her, and she was trying to kick me.

[DETECTIVE]: Um-hum.

[PORTER]: And I'm talking to her, and I was like, you know what? You know, call the police, whatever you got to do. I'm going to go call the police. I don't care.

[DETECTIVE]: Who ended up calling?

[PORTER]: Well, she called them. Then I called them.

[DETECTIVE]: You both called?  Okay.

[PORTER]: You know what I mean? But she's -- I mean, dude, it's just a -- they say I'm being charged with a felony for assaulting her. I don't see it that way.

[DETECTIVE]: Yeah. We weren't sure -- they called us earlier. About an hour after it happened, we get the phone call, hey, this is what we're on.

[PORTER]: Well, they say she fell and --

[OTHER DETECTIVE]: And she broke her wrist.

[PORTER]: -- and broke her wrist, which makes it a felony.

[DETECTIVE]: Yeah.

[PORTER]: Okay. I didn't intentionally --

[DETECTIVE]: Oh, and I --

[PORTER]: You know what I mean?

[DETECTIVE]: Yeah. There's no way you could intentionally break a wrist like that. That's (inaudible).

[PORTER]: Yeah. I mean, I'm not -- I didn't really -- that's why I used the cell phone.

[DETECTIVE]: Um-hum.

[PORTER]: You know, back her up.

*Id.* at 78-82.

{¶ 8}   Later in the transcribed recording Porter offered a further explanation of what he meant when he said he "cracked" her with his phone: "she pounced at me, so, you know, I just stuck the phone out there and cracked her a couple times." *Id.* at 85.  An

additional elaboration on the nature of the altercation came a few pages later in the transcribed recording:

> [PORTER]: Man, look at my hands. You know what I mean? If you look at the cell phone, you'll know.
>
> [DETECTIVE]: Um-hum. Okay.
>
> [PORTER]: It's smashed.
>
> [DETECTIVE]: The officers have it?
>
> [PORTER]: Yes.
>
> [DETECTIVE]: Okay. I'll take a look at it.
>
> [PORTER]: That's what I use. I never use my -- man, believe me, if I used my hands, she wouldn't have never been able to talk to you. She would have been out cold.
>
> [DETECTIVE]: Okay.
>
> [PORTER]: You know, but it wasn't the intentions for me to beat the hell out of her.
>
> [DETECTIVE]: Um-hum.
>
> [PORTER]: She's drunk for one. And when you jump at somebody like this --
>
> [DETECTIVE]: Yeah.
>
> [PORTER]: -- you know, and you challenging them, you know, I just stuck the phone out and cracked her. She jumped back, and I cracked her again, and the second time I cracked her she fell.

*Id.* at 90.

{¶ 9} The detective concluded his testimony by relating that, although he did learn the name of the other neighbor who may have witnessed some of the events of that evening, he was never successful in tracking him down. *Id.* at 98.

{¶ 10} In closing, the defense argued that Porter should be found not guilty because he was defending himself from Lacorte's intoxicated aggression. *Id.* at 112-14. Alternatively, the defense argued that the State, not having put any medical records or testimony into evidence, had not met the "serious physical harm" element of felonious

assault.  *Id.* at 114-16.  As an additional alternative, the defense asserted that even if serious physical harm occurred, Porter should be found guilty of a lesser misdemeanor assault because he recklessly caused serious physical harm rather than knowingly caused it.  *Id.* at 116-17.  Finally, the defense argued that even if self-defense did not apply and Porter knowingly caused serious physical harm, he should be found guilty only of aggravated assault because he was seriously provoked by Lacorte.  *Id.* at 117.  After closing arguments, the court declared a recess in which to deliberate.  *Id.* at 120-22.

{¶ 11}  The trial court reconvened the next day and, after initially appearing ready to find Porter guilty of aggravated assault, it instead found Porter guilty of felonious assault, with the following reasoning:

> THE COURT: * * *  You know, this case is very interesting from the perspective of in listening to both parties testify in this case it appears that what we have here was a situation where it was exacerbated or -- by the consumption of libation.
>
> And, unfortunately, the Court did not get any testimony from anyone other than the two parties involved. And the detective testified, but his testimony was primarily for the playing of the audio recording concerning Mr. Porter's testimony.
>
> In listening to both parties testify, this -- it appears to the Court that this was not their first encounter with each other, and the Court has no - - other than just listening to the testimony and observing the testimony, I have no other validation from that other than that.
>
> The Court -- in listening to the testimony and the audios, I don't believe necessarily that -- even if self-defense was a viable defense, I don't believe self-defense in this particular case has been proven. Mr. Porter stated he walked up to her. They were fussing back and forth. He walked up to her, and he cracked her. In the Court's opinion, that was probably an assault, an assault on his part.
>
> But then we go to the second one. He said she came back, and he cracked her again, and that was at the 10:25 point.[2] And that's the one that gives the Court some concern.
>
> The Court further finds that there was sufficient evidence to establish that there was an injury requiring surgery based on

---

[2] Referencing the minute and second mark within the recorded statement taken by the detective of Porter and introduced (and later transcribed as part of the trial transcript) as State's Exhibit 4.

the testimony of the victim in this case. Any injury, I think -- not any injury, but an injury requiring additional surgery would be serious physical harm.

The other area for the Court to look at was there was argument about Aggravated Assault, which is not a lesser-included offense of Felonious Assault, but the Court, in reviewing the facts of this case, while Felonious Assault may be the indicted charge, I -- counsel approach real quick, please. I better stop before I say any more.

- - -

Thereupon, a discussion was held off the record at the bench.

- - -

THE COURT: All right. The Court at this time will enter a finding of guilty on the charge of Felonious Assault.

*Id.* at 136-38.

{¶ 12} Following the announcement of the verdict, the trial court proceeded directly to sentencing, and, with the agreement of the parties, imposed a sentence of two years imprisonment. *Id.* at 141-42; Dec. 13, 2018 Jgmt. Entry at 1. Porter now appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 13} Porter assigns two errors for review:

[1.] The trial court violated Leslie Porter's rights to due process and a fair trial when, in the absence of sufficient evidence, the trial court found Mr. Porter guilty of felonious assault. Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution.

[2.] The trial court erred failing to make a finding as to whether the Defendant-Appellant satisfied its burden of establishing Aggravated Assault.

## III. DISCUSSION

### A. First Assignment of Error – Whether the Evidence was Sufficient to Convict Porter of Felonious Assault

{¶ 14} The Supreme Court of Ohio has "carefully distinguished the terms 'sufficiency' and 'weight' * * *, declaring that 'manifest weight' and 'legal sufficiency' are 'both quantitatively and qualitatively different.' " *Eastley v. Volkman*, 132 Ohio St.3d 328,

2012-Ohio-2179, ¶ 10, quoting *State v. Thompkins*, 78 Ohio St.3d 380 (1997), paragraph two of the syllabus. Sufficiency is:

> "[A] term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law.

*Volkman* at ¶ 11, quoting *Thompkins* at 386; *Black's Law Dictionary* 1433 (6th Ed.1990). "In reviewing a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 47, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 15} As potentially relevant to this case, felonious assault is defined in the Ohio Revised Code in relevant part as:

> (A) No person shall knowingly do either of the following:
>
> (1) Cause serious physical harm to another.

R.C. 2903.11(A)(1). "Serious physical harm" is:

> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
>
> (b) Any physical harm that carries a substantial risk of death;
>
> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
>
> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
>
> (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).  Porter argues that there was insufficient evidence at trial to prove that he caused serious physical harm to Lacorte and additionally that the evidence is insufficient to show he did so knowingly.  (Porter's Brief at 9-10.)

{¶ 16}  Under both Porter and Lacorte's recitation of the evening's events, Porter struck her two times in the face with either his fist or his cell phone causing her to fall.  (Tr. Vol. III at 31-32, 40-41, 78-82, 85, 90.)  Photographs taken at the hospital show bleeding and swelling of her face and bruising and swelling of her wrist.  (State's Exs. 1-3.)  While Porter accurately points out that the State presented no medical records or testimony to confirm the fact that Lacorte's wrist was fractured, Lacorte testified that she fell, was in pain, had surgery on her wrist, and now has lingering tingling and numbness in her fingers. (Porter's Brief at 9; Tr. Vol. III at 31-32, 35-37.)  We also note that in the recording of Porter's interview introduced into evidence, a detective was permitted to say, without objection from the defense, that Lacorte's wrist was broken.  (Tr. Vol. III at 81-82.)  We find that the trial court, as factfinder, was permitted to make the inference that Lacorte broke her wrist in the fall caused by blows delivered by Porter and that the fracture was serious physical harm.  *Id.* at 121; *see State v. Carter*, 3d Dist. No. 13-18-13, 2018-Ohio-4468, ¶ 29 (citing multiple case law precedent and noting that courts have generally found the serious physical harm element is met in cases where an assault causes a bone fracture).

{¶ 17}  We also agree that Porter caused serious physical harm "knowingly."  "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."  R.C. 2901.22(B).  Here, the evidence shows (and the trial court observed) that Porter was not content to strike the victim just once, but twice, and that the second strike knocked her to the ground breaking her wrist.  (Tr. Vol. IV at 136-38.)  Viewing the evidence in the light most favorable to the prosecution, we find the trial court was justified in inferring that Porter was aware his conduct would probably cause serious physical harm when he struck or "cracked" Lacorte in the face more than once, whether it was with his phone with a hard exterior or otherwise until she fell to the ground and broke her wrist.

{¶ 18}  We acknowledge that this case is somewhat different from other cases in which we have considered whether a single punch may constitute a felonious assault.  What unifies most of those cases is that the punch in question was thrown without warning and

was hard enough that it did internal damage or rendered the victim immediately unconscious. *See State v. Watson*, 10th Dist. No. 17AP-834, 2018-Ohio-4964, ¶ 13-16 (affirming a felonious assault conviction where the defendant, "without any provocation, and without [the victim] having any chance to brace himself in any way, struck [the victim] with a strong closed fist punch to the side of his head" with enough force "that it knocked [the victim] to the ground, left him unconscious for an extended period of time, and damaged his skull and brain"); *State v. Eisenman*, 10th Dist. No. 17AP-475, 2018-Ohio-934, ¶ 11 (affirming a felonious assault conviction where the defendant had punched the victim once in the head with sufficient force to "knock [the victim] out immediately"); *State v. Thomas*, 10th Dist. No. 02AP-778, 2003-Ohio-2199, ¶ 3, 68 (finding that a punch and two kicks delivered "without warning and absent provocation" were a sufficient predicate for felonious assault and murder where the victim was rendered unconscious and suffered multiple skull fractures and brain injury); *see also, e.g.*, *State v. Hampton*, 8th Dist. No. 103373, 2016-Ohio-5321, ¶ 28 (citing multiple case law precedent and finding that one punch, delivered "suddenly and without provocation" and with enough force to produce a brain bleed, could indicate that the attacker knowingly caused serious physical harm); *but cf. State v. McFadden*, 10th Dist. No. 95APA03-384, 1995 WL 694481, 1995 Ohio App. LEXIS 5144, *11-12 (Nov. 21, 1995) (finding that one punch thrown by a person of equal fitness and weight to the victim and who did not have boxing or fighting experience was not "knowingly" causing serious physical harm); *see also State v. McCleod*, 7th Dist. No. 00 JE 8, 2001-Ohio-3480, ¶ 45; *State v. Clark*, 4th Dist. No. 03CA18, 2004-Ohio-3843, ¶ 10-11. While each of these cases is unique, collectively they show that in analyzing an attack, inferences about mens rea depend on the nature and circumstances of the event.

{¶ 19} Porter did not significantly damage Lacorte's face or head and did not knock her unconscious or cause brain injury. (State's Exs. 1-3.) However, Porter, by his own admission, was much stronger than Lacorte and readily admitted to having fighting experience. (Tr. Vol. III at 79, 90-91.) Porter struck Lacorte more than once until she was knocked to the ground and broke her wrist. *Id.* at 32, 40-41, 78. Drawing all inferences in favor of the prosecution, that is enough to infer that Porter knew that his conduct would probably cause serious physical harm to Lacorte.

{¶ 20} We overrule Porter's first assignment of error.

**B. Second Assignment of Error – Whether the Trial Court Erred in Failing to Reject the Inferior Degree Offense of Aggravated Assault Before Finding Porter Guilty of Felonious Assault**

{¶ 21} Aggravated assault is defined in relevant part as follows:

> (A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
>
> (1) Cause serious physical harm to another.

R.C. 2903.12(A)(1). In most cases, aggravated assault would be felonious assault, but for the additional mitigating element that the offense was committed "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force." *Compare* R.C. 2903.11(A)(1) *with* R.C. 2903.12(A)(1). Thus, while it involves an intervening cause of serious provocation and is not specifically a lesser-included offense of felonious assault, it has been considered to be an "inferior degree" of felonious assault. *State v. Deem*, 40 Ohio St.3d 205, 208 (1988), paragraph four of the syllabus. Porter argues that the trial court erred in finding him guilty of felonious assault without considering aggravated assault. We do not agree.

{¶ 22} The trial court did consider aggravated assault and in doing so requested a sidebar with counsel. The trial court said:

> The other area for the Court to look at was there was argument about Aggravated Assault, which is not a lesser-included offense of Felonious Assault, but the Court, in reviewing the facts of this case, while Felonious Assault may be the indicted charge, I -- counsel approach real quick, please. I better stop before I say any more.
>
> - - -
>
> Thereupon, a discussion was held off the record at the bench.
>
> - - -
>
> THE COURT: All right. The Court at this time will enter a finding of guilty on the charge of Felonious Assault.

(Tr. Vol. IV at 137-38.)   While we would have appreciated the trial court placing the discussion on the record to be available for appellate review, no party objected to the off-the-record sidebar or sought to proffer the contents of the discussion.   Thus, the record merely informs us that the trial court considered aggravated assault and ultimately concluded to find Porter guilty of felonious assault.

{¶ 23} We have already found that the evidence sufficiently supports Porter's conviction for felonious assault.  *See supra*, at ¶ 14-19.  Although we acknowledge that the evidence may tend to show that Porter acted in a sudden passion or sudden fit of rage, the evidence does not show a "serious provocation occasioned by the victim that [wa]s reasonably sufficient to incite [Porter] into using deadly force."  R.C. 2903.12(A).  By both Porter and Lacorte's account, the two were arguing about trivial issues and, although Lacorte may or may not have approached Porter or provoked him in a minor way with foul and challenging language, nothing in either of their accounts heard at trial suggests a serious provocation by Lacorte that was "reasonably sufficient to incite [a] person into using deadly force."  R.C. 2903.12(A).  Courts have generally held that "words alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations."  *State v. Mack*, 82 Ohio St.3d 198, 201 (1998), citing *State v. Shane*, 63 Ohio St.3d 630 (1992), paragraph two of the syllabus; *see also Deem* at 205, 211 (finding that a fender bender and a historically stormy relationship was not reasonably sufficient given a cooling-off period).

{¶ 24}  Porter's second assignment of error is overruled.

## IV.  CONCLUSION

{¶ 25}  The evidence at trial showed that Lacorte suffered serious physical harm in the form of a broken wrist from action knowingly taken by Porter when he struck Lacorte in the face at least twice until she fell and broke her wrist.  Viewing the evidence in the light most favorable to the prosecution, this evidence was sufficient to show that Porter acted with awareness his attack would "probably cause" serious physical harm to Lacorte.  We therefore overrule Porter's first assignment of error.  We also see no indication in the evidence presented that Lacorte offered Porter a serious provocation reasonably sufficient to incite him into using deadly force.  Accordingly, we also overrule Porter's second

assignment of error.   The judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DORRIAN and NELSON, JJ., concur.