[Cite as *State v. Rexrode*, 2018-Ohio-3634.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 17AP-873 |
| | | (M.C. No. 16CRB-24962) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Jacob C. Rexrode, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 11, 2018

**On brief**: *Zachary M. Klein*, City Attorney, *Lara N. Baker*, *Melanie R. Tobias*, and *Orly Ahroni*, for appellee. **Argued**: *Orly Ahroni*.

**On brief**: *Yeura R. Venters*, and *George M. Schumann*, for appellant. **Argued**: *George M. Schumann*.

APPEAL from the Franklin County Municipal Court

BROWN, P.J.

{¶ 1} Jacob C. Rexrode, defendant-appellant, appeals from a judgment of the Franklin County Municipal Court, finding him guilty of violation of protection order.

{¶ 2} E.C., the victim, and appellant were involved in a relationship. In October 2016, E.C. told appellant she wanted to end their relationship. Appellant sent hostile text messages to E.C. E.C. then filed aggravated menacing and menacing complaints against appellant (which are not the subject of this appeal) and also sought a civil protection order ("CPO").

{¶ 3} On October 17, 2016, the court issued an ex parte CPO which prohibited appellant from contacting E.C., including via telephone. On October 20, 2016, appellant

was arrested on the menacing and aggravated menacing complaints and transported to a hospital for psychiatric treatment. While appellant was in the emergency room, a deputy sheriff, Roland Stewart, arrived at the hospital to serve appellant with a certified copy of the CPO. At trial, appellant claimed Deputy Stewart never gave him the CPO and he was unaware it included telephone calls.

{¶ 4} The next day, appellant called E.C. from the psychiatric unit. E.C. filed a complaint for VPO the same day ("first VPO").

{¶ 5} On October 24, 2016, officers from the Columbus Police Department arrested appellant after he was discharged from the hospital. Appellant did not attend the full CPO hearing that day.

{¶ 6} On October 28, 2016, while still in jail, appellant telephoned E.C.'s number 11 times. E.C. filed a second VPO charge ("second VPO").

{¶ 7} Appellant was subsequently found to be incompetent by a court psychologist but was restored to competency prior to trial.

{¶ 8} Appellant pled no contest to the menacing and aggravated menacing charges and the trial court sentenced him to probation. The trial court held a bench trial on the first and second VPOs, and found appellant not guilty on the first VPO charge and guilty on the second VPO charge. The trial court sentenced appellant to probation. Appellant appeals the trial court's judgment, asserting the following two assignments of error:

> [I.] APPELLANT'S CONVICTION FOR VIOLATING A PROTECTION ORDER IS NOT SUPPORTED BY SUFFICIENT EVIDENCE.
>
> [II.] APPELLANT'S CONVICTION FOR VIOLATING A PROTECTION ORDER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 9} We address appellant's assignments of error together. Appellant argues in his assignments of error the trial court's judgment was against the manifest weight of the evidence and based on insufficient evidence. Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally adequate to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law. *Id.* In determining whether the

evidence is legally sufficient to support a conviction, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 10} The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *Thompkins* at 387. When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* at 387. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); *State v. Strider-Williams*, 10th Dist. No. 10AP-334, 2010-Ohio-6179, ¶ 12.

{¶ 11} In addressing a manifest weight of the evidence argument, we are able to consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, in conducting our review, we are guided by the presumption that the jury, or the trial court in a bench trial, " 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Accordingly, we afford great deference to the jury's determination of witness credibility. *State v. Redman*, 10th Dist. No. 10AP-654, 2011-Ohio-1894, ¶ 26, citing *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 55. *See also State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus (credibility determinations are primarily for the trier of fact).

{¶ 12} The sole issue raised by appellant concerns whether police served appellant with the CPO in conformity with law. "To sustain a conviction for a violation of a protection order pursuant to R.C. 2919.27(A)(2), the state must establish, beyond a

reasonable doubt, that it served the defendant with the order before the alleged violation." *State v. Smith*, 136 Ohio St.3d 1, 2013-Ohio-1698, syllabus. "Served" means actual delivery of the protection order to the defendant, and not mere knowledge or notice that a protection order was issued. *Id.* at ¶ 19. Service of a CPO is governed by Civ.R. 65.1(C). In relevant part, the rule provides: "Initial service, and service of any ex parte protection order that is entered, shall be made in accordance with the provisions for personal service of process within this state under Civ.R. 4.1(B)." Civ.R. 65.1(C)(2). Civ.R. 4.1(B) provides, in pertinent part:

> When process issued from * * * a court of common pleas * * * is to be served personally under this division, the clerk of the court shall deliver the process and sufficient copies of the process and complaint, or other document to be served, to the sheriff of the county in which the party to be served resides or may be found. * * * The person serving process shall locate the person to be served and shall tender a copy of the process and accompanying documents to the person to be served. When the copy of the process has been served, the person serving process shall endorse that fact on the process and return it to the clerk, who shall make the appropriate entry on the appearance docket.

{¶ 13} In the present case, appellant argues plaintiff-appellee, the State of Ohio, failed to present sufficient evidence it transferred possession of a copy of the CPO to him. Appellant contends that Deputy Stewart could not remember if he gave a copy of the CPO to appellant at the hospital after reading the contents of the CPO to him, Deputy Stewart could not remember if he gave it to the officers or hospital staff present at the time, there was no evidence that appellant was subsequently ever given the CPO by any officer or hospital staff, and appellant did not take physical possession of the CPO until months after being charged with its violation. Appellant asserts Deputy Stewart could not have given him the CPO because his hands were handcuffed behind him.

{¶ 14} At the hearing, appellant recalled the events that occurred while he was in the emergency room. He testified he never saw, touched, or read the CPO until two weeks before the hearing. Appellant also stated he was handcuffed behind his back when Deputy Stewart attempted to serve him the CPO. He said another officer told him that Deputy Stewart had a paper to serve him and Deputy Stewart briefly read something to him from the paper. Deputy Stewart told him it was a CPO. However, appellant claimed Deputy

Stewart never told him that he was not allowed to call E.C. Appellant testified Deputy Stewart never handed him the CPO but, instead, handed it either to one of the other officers or the nurse, but then they all walked out of the room while he was still seated and handcuffed behind his back. Appellant further stated that, while at the hospital, he did not have access to his possessions or the CPO, and he did not get his possessions back when he was discharged. He asserted the officers who were present with him in the hospital also never gave him any papers. He claimed that when he was charged with calling E.C. from the hospital and jail, he did not know the judge had ordered him not to call her.

{¶ 15} The state presented the testimony of Deputy Stewart. Although Deputy Stewart could not specifically remember whether he gave the CPO to appellant at the hospital, he did present extensive testimony related to his normal routine for serving CPOs in the past. Under Evid.R. 406: "[e]vidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." The rationale for the admission of habit evidence is that "habitual acts may become semi-automatic and may tend to prove one acted in the particular case in the same manner." *Cardinal v. Family Foot Care Ctrs., Inc.*, 40 Ohio App.3d 181, 182 (8th Dist.1987). "A habit is defined as a person's regular practice of meeting a particular kind of situation with a specific type of responsive conduct." *Mulford-Jacobs v. Good Samaritan Hosp.*, 1st Dist. No. C-950634 (Nov. 20, 1996), citing McCormick, *Evidence*, Section 195, at 825 (4th Ed.Strong Ed.1992). To be admissible as evidence of habit, the occurrence of the stimulus and the responsive behavior must occur frequently enough to constitute a pattern. *Id.* A sufficient foundation must be provided for the admission of habit evidence. *Cannell v. Rhodes*, 31 Ohio App.3d 183, 185 (8th Dist.1986). Furthermore, Evid.R. 406 relates to relevance and not to weight of the evidence. Weighing the evidence is within the province of the trier of fact.

{¶ 16} Here, Deputy Stewart testified he had only a "faint" memory of his service of the CPO on appellant. However, he testified to his standard routine and general habit in serving CPOs for over ten years. He stated that once he makes contact with the respondent named in the CPO, he explains to the respondent why he is there and that he

is going to read the CPO aloud to the respondent. Deputy Stewart then starts at the beginning of the document, stating the case number, the judge, the petitioner, and the protected parties. He then reads the respondent the bottom of the first page that indicates there will be a hearing. Deputy Stewart testified he then turns to the next page and reads that it is an ex parte hearing and defines "ex parte." He then reads to the respondent the third page, which explains everything the person is not allowed to do that is checked in a checklist, and then tells him the court date. He then "give[s] [the respondent] [his or her] document, sign[s] the paperwork I have, [and] make[s] sure [the petitioner] understand[s] it." (Mar. 1, 2017 Tr. at 52.) To make sure the person understands it, he asks if the person understands and whether he or she has any questions. Respondents usually do not ask him questions because they are angry. Deputy Stewart testified that, in this case, he signed the CPO receipt, showing he served the CPO on appellant. He stated his habit was that when he served a CPO, he executed a receipt.

{¶ 17} Deputy Stewart further testified the only time he would not hand the CPO directly to the respondent was if a nurse or security staff said the respondent could not have it. Even if the respondent were handcuffed, he would hand the CPO to him. Only "[v]ery rarely" would he not give the CPO directly to the actual person. (Mar. 1, 2017 Tr. at 61.) He did not remember any reason why he would not have directly handed the CPO to appellant in this case. If there were any special or unusual situation, such as the respondent being in shackles, Deputy Stewart's habit was to write the unusual circumstance on the page he signs. He testified that "[d]efinitely, no," he did not initially hand the CPO to someone else in the hospital room. (Mar. 1, 2017 Tr. at 103.)  He said in some circumstances he would read the CPO to the respondent, serve it to him or her, and then hand it to the nurse and explain that the nurse should put it in the property bag. He stated he could not remember if he eventually handed it to a nurse, but it did not "stand out in [his] mind that [he] did that, so [he] can't say for sure." (Mar. 1, 2017 Tr. at 104.) He testified that if the individual is handcuffed or handcuffed to a chair, he would still hand the CPO to the person unless there is a security reason as to why the respondent could not have it. In that case, the respondent would hang on to it, and he would tell the individual to give it to an officer or nurse. However, Deputy Stewart testified that if an

individual had his hands handcuffed behind his back, he would assume the individual was going to jail, so he would give the CPO to the officer in charge of the individual.

{¶ 18} With respect to appellant's insufficiency of the evidence argument, we find that, viewing the evidence most strongly in favor of the prosecution, any rational trier of fact could have found the state proved Deputy Stewart properly served the CPO. Although Deputy Stewart only had a "faint" memory of his service of the CPO on appellant, he testified that his standard routine was to give the CPO to the respondent and sign the CPO receipt to show that he served the order. He said he very rarely would not give the CPO to the respondent. The only circumstances under which he does not hand the CPO directly to the respondent is if a nurse or security staff says he cannot have it, or the respondent is handcuffed behind his back. In this case, he did not remember any reason why he would not have directly handed the CPO to appellant and if there were any special or unusual situation, his habit was to write that on the page the deputy signs. In this case, he did not make any notation that anything unusual happened during his service of the CPO. He also testified that "[d]efinitely, no," he did not hand the CPO to someone else in the hospital room. He might have eventually handed it to a nurse after serving it on appellant, but it did not stand out in his mind that he did. Construing this evidence most strongly in favor of the state, we find the trial court's determination that appellant was properly served was based on sufficient evidence. A rational trier of fact could have concluded that Deputy Stewart served appellant the CPO based on his usual routine and habit.

{¶ 19} With regard to the manifest weight of the evidence argument, we similarly find the trial court's judgment was not against the manifest weight. In conflict with Deputy Stewart's habit testimony outlined above, appellant testified that Deputy Stewart never gave him the CPO. However, the trial court was free to disbelieve appellant's testimony. Interestingly, appellant never testified as to whom Deputy Stewart actually gave the CPO if he did not give it to appellant. Thus, although the burden of proof was not on appellant, appellant's lacking memory on this crucial detail raises an issue of whether his testimony regarding this and other circumstances surrounding the event should be believed.

{¶ 20} Appellant's most compelling argument is his testimony that he was handcuffed behind his back. This testimony was especially pertinent because Deputy

Stewart testified he would not have handed the CPO to appellant if he were handcuffed behind his back because that would mean he was a security risk and going to jail. Instead, Deputy Stewart stated he would have given the CPO to the custodial officer under such circumstances. However, it is reasonable that the trial court could have discounted appellant's testimony on this point, because Deputy Stewart testified strongly that he would have remembered and noted such an unusual circumstance if he had handed the CPO to a police officer. Deputy Stewart was certain that he did not hand the CPO to another officer in the present case, because he has never given a CPO to a police officer in over ten years of serving legal documents. Deputy Stewart's testimony was certain and without reservation, and the trial court would have been reasonable to find him credible on this point. Therefore, after reviewing all of the evidence, we find the trial court did not clearly lose its way and create a manifest miscarriage of justice, and the court's judgment was not against the manifest weight of the evidence. For these reasons, we overrule appellant's first and second assignments of error.

{¶ 21} Accordingly, appellant's two assignments of error are overruled, and the judgment of the Franklin County Municipal Court is affirmed.

*Judgment affirmed.*

SADLER and DORRIAN, JJ., concur.

_____