[Cite as *State v. Carnicom*, 2021-Ohio-1675.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio/City of Bowling Green          Court of Appeals No. WD-20-027

    Appellee                                                    Trial Court No. 19CRB02328

v.

 Shawn M. Carnicom                              **DECISION AND JUDGMENT**

    Appellant                                                  Decided:  May 14, 2021

* * * * *

Hunter Brown, Bowling Green City Prosecutor, for appellee.

Esteban R. Callejas, for appellant.

* * * * *

**MAYLE, J.**

## Introduction

{¶ 1} Following a jury trial, the defendant-appellant, Shawn Carnicom, was convicted in the Bowling Green Municipal Court for violating a temporary protection order by repeatedly calling the victim from jail.  On appeal, Carnicom argues that the state failed to show that his phone calls violated the order.  He also alleges that the trial

court erred in admitting irrelevant evidence that unduly prejudiced the jury. Finding no error, we affirm.

**Facts and Procedural History**

{¶ 2} Bowling Green Police Detective Doug Hartman was dispatched to the Wood County Hospital on November 7, 2019, following a report of "potential child abuse."

{¶ 3} The next morning, the Bowling Green Municipal Court issued a domestic violence temporary protection order ("TPO") pursuant to R.C. 2919.26. The TPO identified Shawn Carnicom as the "subject" of the order and two minor children and their mother, A.L., as the "protected persons." At trial, A.L. identified Carnicom as her boyfriend and said that they have one child together.

{¶ 4} The TPO was served on Carnicom in jail on November 8, 2019, at 10:20 a.m. by either Corporal Charles Mauer or his deputy.[1] According to Corporal Mauer, the process of serving a TPO involves "explain[ing] everything on the document" to the subject and instructing the person to "carefully review" it.

---

[1] In his brief, Carnicom appears to suggest that the state failed to prove that he was properly served with the TPO because, at trial, Corporal Mauer did not specifically recall serving it. But, service of a TPO is not an element of the offense. R.C. 2919.27(D). Instead, the state need only show that the defendant was shown the TPO or was informed of it by a judge or law enforcement officer. *Id.* Here, the record contains a copy of the TPO signature page, which contains Carnicom's acknowledgement of service and Corporal Mauer's return of service. These facts are more than sufficient to establish that Carnicom received proper notification, if not actual service, of the TPO. *Accord State v. Rexrode*, 10th Dist. Franklin No. 17AP-873, 2018-Ohio-3634, ¶ 10.

2.

{¶ 5} Detective Hartman met with A.L. that same day to discuss the TPO. He told her that the TPO "goes both ways" —i.e., Carnicom could not contact her, and she could not contact Carnicom. A.L. told the detective that she had been "receiving messages from [him] at the jail." Detective Hartman restated that she was not to communicate with Carnicom.

{¶ 6} The Wood County Justice Center, where Carnicom was incarcerated, maintains inmate phone records (through a third-party provider). After verifying A.L.'s cell phone number, Detective Hartman reviewed the phone logs of all outgoing calls from the jail to her cell phone. The phone logs indicate the location of the call from within the jail but not the identity of the caller. At trial, a sampling of voicemail messages—made from the jail and left on A.L.'s voicemail—were played during A.L.'s testimony, and she identified Carnicom as the caller.

{¶ 7} According to Detective Hartman, Carnicom "started [calling A.L.] immediately" on November 7, 2019, after he was booked. He continued calling her—a total of 44 times—throughout the day. The calls resumed the next day at noon—which was *after* Carnicom had been served with the TPO. The state alleged that the phone logs demonstrated that Carnicom called A.L. 15 times on November 8, 2019, 9 times on November 9, 2019, 5 times on November 10, and 23 more times over the course of the month, for a total of 52 calls. Detective Hartman said that most of the calls were "hang ups," but Carnicom left nearly a dozen voicemails on A.L.'s phone line after the TPO was in effect.

3.

**{¶ 8}** On December 6, 2019, Carnicom was charged with five counts of violating the terms of the TPO, in contravention of R.C. 2919.27(A)(1), all misdemeanors of the first degree. The state alleged that between November 8 and December 1, 2019, Carnicom "called [A.L.], by telephone from the Wood County Justice Center, in violation of the protection order." Before trial, the state dismissed Counts 2 through 5, leaving only Count 1 to be tried. After the state had presented its case, Carnicom moved for an acquittal, arguing that the state had failed to show that he violated the terms of the TPO. The trial court denied the motion, and the jury found Carnicom guilty as charged. The trial court sentenced Carnicom to serve 180 days in jail. Carnicom appealed and presents two assignments of error for our review.

> I. The trial court erred when it failed to grant Appellant's Rule 29 [sic], then accepted the jury's guilty verdict which was clearly against the manifest weight of the evidence, and based upon insufficient evidence.

> II. The trial erred when it allowed the State to present irrelevant evidence that was more prejudicial than probative.

## The TPO Violation

**{¶ 9}** In his first assignment of error, Carnicom argues the trial court erred by denying his Crim.R. 29 motion for acquittal. Carnicom also argues that his conviction for violating the TPO was against the manifest weight of the evidence. We will address both arguments in turn.

4.

{¶ 10} "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker*, 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978).

{¶ 11} Carnicom was convicted of violating a protection order, a violation of R.C. 2919.27(A)(1), which provides that, "[n]o person shall recklessly violate the terms of * * * [a] protection order issued * * * pursuant to section 2919.26 * * * of the Revised Code.

{¶ 12} R.C. 2919.26(C)(1) authorizes a trial court to issue a protection order "that contains terms designed to ensure the safety and protection of the complainant, alleged victim, or the family or household member." The Rules of Superintendence for the Courts of Ohio further require that "[i]n every case in which [a] court issues a [TPO] pursuant to [R.C.] 2919.26, it shall use * * * Form 10.02-A," or one that is "substantially similar." Sup.R. 10.02(B).

5.

{¶ 13} In this case, the trial court used Form 10.02-A. The TPO contains a general prohibition that "**DEFENDANT SHALL NOT ABUSE**, harm, attempt to harm, threaten, follow, stalk, harass, force sexual relations upon, or commit sexually oriented offenses against the protected offenses named in this Order." (Emphasis in the original.) After this general provision, the TPO states "**ALL OF THE PROVISIONS CHECKED BELOW ALSO APPLY TO THE RESPONDENT**" and then contains 12 numbered paragraphs—each with a box to be checked if applicable.

{¶ 14} Here, the trial court checked all of the additional provisions at paragraphs 1 through 12. So—in addition to the general prohibition set forth above—Carnicom was also ordered, for example, to "surrender all keys and garage door openers to [the family] residence," was prohibited from "canceling utilities or insurance" and ordered not to come "within 500 feet" of any protected persons, among others.

{¶ 15} On appeal, Carnicom argues that the state failed to establish that he violated one of those "additional" provisions—specifically paragraph 5. Paragraph 5 provides that,

> DEFENDANT SHALL NOT INITIATE OR HAVE ANY
> CONTACT with the protected persons named in this Order at their
> residences, businesses, places of employment, schools, day care centers, or
> child care providers. Contact includes, but is not limited to, landline,
> cordless, cellular or digital telephone; text; instant messaging; fax; e-mail;
> voice mail; delivery service; social networking media; blogging; writings;

6.

electronic communications; or communications by any other means directly or through another person. Respondent may not violate this Order **even with the permission of a protected person.** (Emphasis in the original.)

{¶ 16} Carnicom asserts that the record lacks any evidence "as to the location of [A.L.'s] phone at the time that [he called her]." He concludes that—in the absence of any evidence that the protected persons were at "one of those six places [where] contact [is] prohibited," i.e., their residence, business, place of employment, school, day care center, or child care provider—the evidence is insufficient to establish a violation of paragraph 5.

{¶ 17} The state concedes that the record contains no evidence as to A.L.'s whereabouts at the time she received Carnicom's calls. But, it urges this court not to accept Carnicom's "dangerous" argument or risk "do[ing] away with domestic violence protection orders in their entirety." It also cites a number of cases involving TPO violations where the defendant was charged with having improper contact with a protected person. Based upon our review of those cases, the location of the victim was not at issue in any of them—and, therefore, do not support the state's argument that the victim's location is irrelevant for purposes of determining a violation of paragraph 5 of the TPO at issue here, which follows Form 10.02-A.

{¶ 18} Regardless, we need not determine whether Carnicom violated the specific prohibitions of paragraph 5 of the TPO—which apply *in addition to* the general prohibition of the TPO. Carnicom was charged, and the jury was tasked, with determining, whether he "recklessly violated the terms of the protection order."

7.

(Transcript at 164.) The general prohibition of the TPO clearly states that "**DEFENDANT SHALL NOT ABUSE** harm, threaten, follow, stalk, harass, force sexual relations upon, or commit sexually oriented offenses against the protected persons named in this Order."

{¶ 19} We focus on the term "harass." Although the TPO does not define "harass," courts have recognized that it means "'to disturb persistently; torment, as with trouble or cares; bother continually; pester; persecute * * * to trouble by repeated attacks * * *.' Webster's New Universal Unabridged Dictionary (1996) 870. Implicit in the word 'harass' is a continuing course of conduct." *Jeffers v. Jeffers*, 10th Dist. Franklin No. 00AP-442, 2001 WL 118530, *3 (Feb. 13, 2001) (Defining the term "harass," as used in a civil protection order).

{¶ 20} Here, the state presented strong, circumstantial evidence that Carnicom called A.L. 52 times after being served with the TPO. In addition to the dozens of hang-ups, he also left many messages. Based upon our review, every voicemail contained an emphatic, almost desperate expression of love (e.g., "I love and miss you guys with all my heart. I hope you guys are okay. Love you. I do love you. Hope to see you soon. Hear from you. Love you. Bye.") Other times, his message was dire (e.g., "This is just ridiculous. But, know I love you all. If I don't make it out, I love you."). Carnicom could also be overtly manipulative, like when he told A.L.—in one call—that he had authorized his mom to sell "everything" to help A.L. "get whatever" she needed, but—in the next call—bemoaned that it "kinda sucks to have nothing. But I'm used to having

8.

nothing. It is what it is. Thanks. Much love." In his last voicemail, Carnicom tells A.L. to "go back to work" or "we ain't gonna have shit."

{¶ 21} Reviewing this evidence in a light most favorable to the state, we find that any rational trier of fact could have determined that Carnicom engaged in harassing conduct by calling A.L. 52 times after being served with the TPO. "An alleged abuser's incessant phone calls to a protected person rises to the level of 'annoying' conduct meant to harass." *State v. Stanley*, 10th Dist. Franklin No. 06AP-65, 2006-Ohio-4632, ¶ 13. (Finding that any rational trier of fact could have found the "harass" element of the crime of telephone harassment under R.C. 2917.21(B) was proven beyond a reasonable doubt.) Here, the jury could have found that the phone calls, which continued over the course of the month, were designed to persistently disturb or pester A.L. and, based upon the content of the voicemails, Carnicom's intention was to torment her with his troubles.

{¶ 22} Carnicom also argues that he cannot be found to have violated the TPO because A.L. did not listen to the voicemail messages and did not even know that he had called her—and, therefore, the trial court should have granted his Crim.R. 29 motion. We reject this argument for several reasons. First, A.L. was instructed to have no communication with Carnicom, and she apparently followed that instruction. Second, it is the conduct of the defendant—not the protected person—that determines whether a TPO violation has occurred. *See, e.g., State v. Dinka*, 12th Dist. Warren No. CA2014-01-002, 2015-Ohio-63, ¶ 1 (Rejecting argument that defendant did not violate TPO by having improper contact because the protected person "did not accept calls").

9.

In sum, we find that any rational trier of fact could have found that Carnicom violated the TPO by harassing a protected person, in violation of R.C. 2919.27(A)(1), beyond a reasonable doubt. Thus, the trial court did not err when it denied Carnicom's Crim.R. 29 motion to dismiss.

{¶ 23} Within his first assignment of error, Carnicom also argues that his conviction is against the manifest weight of the evidence. When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶ 24} Carnicom relies upon the same arguments he raised with respect to sufficiency to argue that his conviction is against the manifest weight of the evidence. Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the jury's credibility determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14. A jury does not lose its way just because it resolved issues of fact in the state's favor. Here, we have reviewed the evidence that was

10.

presented to the jury, and we find that this is not an exceptional case where the jury lost its way in finding Carnicom guilty of the TPO violation.

{¶ 25} In sum, we find that the state presented legally sufficient evidence of the crime of violating a protection order and that the conviction is not against the manifest weight of the evidence. Accordingly, Carnicom's first assignment of error is found not well-taken.

### The Admissibility of Other Jailhouse Calls

{¶ 26} In his second assignment of error, Carnicom alleges that the trial court erred when it overruled his objection to the admission of phone logs and messages left by him on A.L.'s cell phone on November 7, 2019, before the TPO went into effect.

{¶ 27} All relevant evidence is admissible. Evid.R. 402. "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The trial court has broad discretion in the admission and exclusion of evidence and "unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, [the appellate] court should be slow to interfere." *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). For an error to have materially prejudiced a defendant's case means that it must have affected the outcome of the trial. *State v. Gonzalez*, 154 Ohio App.3d 9, 2003-Ohio-4421, 796 N.E.2d 12, ¶ 99 (1st Dist.). "The term 'abuse of discretion' * * * implies that the court's attitude is unreasonable,

arbitrary or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 28} On appeal, Carnicom argues that the November 7, 2019 calls were irrelevant because they were "legal," and therefore, they are not probative of whether calls made after that date violated the TPO. The state counters that the calls were relevant to show Carnicom's "tonal shift" between the voicemails left before the TPO went into effect and after.

{¶ 29} Upon review, in the earlier calls, Carnicom can be heard accusing A.L. of "putting [him] in jail for no reason," of having another boyfriend, of caring "nothing for [him]" and of berating her for "not answer[ing] the phone." As previously discussed, *after* the TPO was served, Carnicom continued with the incessant calling and messages. But, Carnicom's tone became more subtle and less accusatory and included the additional messages of professed "love."

{¶ 30} We find that the messages predating the TPO could be relevant to establishing Carnicom's criminal intent in continuing to contact A.L. after he had been served with the TPO. In order to convict, the state was required to show that Carnicom recklessly violated the terms of the TPO. Pursuant to R.C. 2901.22(C), a person acts recklessly when, "with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that

12.

such circumstances are likely to exist." The difference, in tone and content, of the messages predating the TPO are evidence that, despite the TPO, Carnicom disregarded a known risk and proceeded anyway. That is, his more measured tone suggests that he knew his calls were being monitored and could subject him to prosecution, and still he persisted. In addition, a comparison of the two sets of calls is further evidence to counter Carnicom's apparent challenge regarding whether he was properly served with the TPO. His change in demeanor undercuts any claim that he did not know about the TPO. Accordingly, we cannot say that the trial court abused its discretion when it determined that the November 7, 2019 messages were relevant to the case.

{¶ 31} Carnicom also argues that, even if the November 7, 2019 messages were relevant, they were unduly prejudicial. Under Evid.R. 403(A), otherwise relevant evidence is inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." A trial court, however, has broad discretion to determine whether relevant evidence must be excluded in accordance with Evid.R. 403(A) because "the exclusion of *relevant* evidence under Evid.R. 403(A) is even more of a judgment call than determining whether the evidence has logical relevance in the first place." *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 40.

{¶ 32} Here, Carnicom claims that the calls were "more prejudicial than probative" but offers no argument in support of that claim. Moreover, all evidence admitted by the state is designed to be prejudicial to the defendant's case in one way or

13.

another—the issue is whether the state's evidence is *unfairly* prejudicial. Based upon our review of the record, we do not see any basis to conclude that the challenged evidence was somehow unfairly prejudicial or that it affected the outcome of the case. Indeed, the trial court specifically limited the jury's consideration to the calls placed between November 8 and December 2, 2019, when considering his guilt. We presume that the jury followed those instructions.

{¶ 33} After a thorough review of the record in this case, we cannot find that the trial court abused its discretion in admitting the evidence of the November 7, 2019 phone calls. Therefore, we find Carnicom's second assignment of error not well-taken.

## Conclusion

{¶ 34} In sum, we find that the state presented legally sufficient evidence of the crime of violating a temporary protection order, in violation of R.C. 2919.27(A)(1), and that the conviction is not against the manifest weight of the evidence. We further find that the trial court did not abuse its discretion in admitting evidence of Carnicom's conduct that predated the TPO. Accordingly, we find that Carnicom's assignments of error are not well-taken, and we affirm the trial court's March 3, 2020 judgment of conviction. Pursuant to App.R. 24, Carnicom is ordered to pay the costs of the appeal.

Judgment affirmed.

14.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J. _____

_____
JUDGE

Gene A. Zmuda, P.J. _____

_____
JUDGE

Myron C. Duhart, J. _____
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.